# BORRELLI & ASSOCIATES
## P.L.L.C.
www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 1010 Northern Boulevard |
| Suite 1821 | Suite 328 |
| New York, NY 10017 | Great Neck, NY 11021 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

June 30, 2017

<u>Via Electronic Case Filing</u>
The Honorable Vera M. Scanlon
United States Magistrate Judge for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: *Caltenco v. G.H. Food Inc., d/b/a Natural Garden et al.*
     <u>Docket No: 16-CV-1705(LDH)(VMS)</u>

Dear Judge Scanlon:

  We represent Plaintiff, Edmundo Caltenco, in the above-referenced action brought against Defendants, G.H. Food, Inc. and Gurdip Singh, his former employers, under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for, *inter alia*, unpaid overtime and "spread of hours" premiums. We write in support of Plaintiff's motion seeking sanctions against the Defendants for failing to provide discovery responses in violation of the Court's Order directing them to do so, including an order precluding Defendants from offering certain evidence at trial and an adverse inference instruction to be presented to the jury based upon their spoliation of evidence.

  As alleged in his complaint, Plaintiff worked in Defendants' grocery store, Natural Garden, located in Kings County, New York, as a stock clerk. *See* Complaint, par. 13 (Dkt. No 1). Plaintiff contends that Defendants failed to pay him wages, at any rate of pay, for hours that he worked in excess of forty per week, and also failed to pay him "spread of hours" premiums for shifts that exceeded ten hours per day. *Id.*, paras. 17-20. Plaintiff was deposed in this action on March 30, 2017. *See* Caltenco Deposition Transcript (Ex. 1 hereto). Consistent with his pleading, Plaintiff testified that he worked for Defendants from February 9, 2009 until December 29, 2015. *Id.*, p. 90, l. 2 – 13; p. 11, l. 19–21. Plaintiff testified that every work day he worked twelve hours, from 8:00 a.m. until 8:00 p.m. *Id.*, p. 58, l. 7–19; p. 61, l. 2 – p. 62, l. 14. Thus, Plaintiff's testimony established that he worked seventy-two hours per week, thirty-two of which were overtime hours.

Defendant Gurdip Singh was deposed on March 27, 2017. *See* Singh Deposition Transcript (Ex. 2 hereto). He testified that Plaintiff worked only sixty-two hours per week. *Id.*, p. 26, l. 4 -6; p. 30, l. 21 – p. 31, l. 8; p. 34, l. 16-18. He further testified that the only system used to keep track of employees' hours worked was that the manager of the store wrote them down in bound notebooks. *Id.*, p 17, l. 20 – p. 19, l. 12; p. 53, l. 19 – p. 54, l. 21. Singh claims that he gave those purported time records to Defendants' counsel, who produced photocopies of the pages of the notebook in discovery response, identified as "Bates D00001 – D00303," and which were marked as "Plaintiff's Exhibit 2." *Id.*, p. 19, l. 16 – p. 20, l. 23; *see* Exhibit 3 hereto. He further testified that Plaintiff was paid weekly in cash, which payments were recorded in the same notebook in which the manager recorded the hours. Ex. 2, p. 26, l. 7 – 21. Plaintiff would then, according to Singh, sign the notebook where his weekly hours and the amount that he was paid for each week were allegedly listed. *Id.*, p. 48, l. 2 – p. 49, l. 22; *see also* Exhibit 3 hereto. Plaintiff confirmed, in his own deposition testimony, that he signed the notebook each week confirming the amount that he was being paid. *Id.*, p. 83, l. 18–22. However, he testified that the notebook, which he signed each week to confirm the amount of wages he received, did not state his weekly hours worked as allegedly recorded by the manager, as Defendant Singh claimed. *Id.*, p. 82, l. 4–19. Plaintiff was then shown by counsel the photocopies of the notebook pages that he had signed each week and was asked whether the weekly work hours listed in the photocopies were listed in the notebook when he signed it, to which he responded that they were not. *Id.*, p. 82, l. 23 – p. 87, l. 8; *see also* Exhibit 3 hereto (photocopies of the pages of the notebook). Defendant Singh further testified that his accountant created a written summary of Plaintiff's hours and wages (Bates No. D00304). Ex. 2, p. 71, l. 15 – p. 72, l. 14, and Ex. 4 hereto.

Defendants' current store manager, Nitim Sharma, was deposed on May 4, 2017. *See* Sharma Transcript (Ex. 5 hereto). He was the manager for approximately the last six months of Plaintiff's employment, beginning in June 2015. *Id.*, p. 6, l. 19 – 24. As the manager, he was responsible for keeping track of Plaintiff's hours, which he claims that he did by writing the hours down on "loose sheets of paper," which he gave to Defendant Singh each week. *Id.*, p. 9, l. 11 – p. 10, l. 17. Plaintiff's counsel stated a request for production of those records. *Id.*, p. 11, l. 8 – 11.

On April 20, 2017, Plaintiff served discovery requests for (1) the physical inspection of the notebooks in which the manager allegedly recorded Plaintiff's hours (Request No. 3); and (2) all versions and drafts of the accountant's summary of hours and wages, along with the metadata for those documents. *See* Ex. 6. On May 4, 2017, Plaintiff served a discovery request for the "loose sheet" time records allegedly created by manager Sharma. *See* Ex. 7. On May 5. 2017, Defendants filed a motion to extend their time to respond to the requests. (Dkt. No. 34). On May 8, 2017, the Court issued a Minute Order directing Defendants to produce the required metadata and related responses, and to make the notebook available for inspection, by May 12, 2017. On May 10, 2017, Defendants filed another motion requesting an extension of time to produce the documents and to make the original notebooks available for inspection. (Dkt. No. 37). Your Honor held a motion conference on May 18, 2017, and issued an Order again directing Defendants to produce the metadata and the notebooks for inspection, by June 15, 2017.[1] (Dkt. No. 40). That Order also directed Defendants to respond to Plaintiff's request for the time records created by manager Sharma by June 15, 2017. *Id.* On that same date, May 18, 2017, Defendants served responses to

---

[1] The Court's May 18, 2017 Order also stated that if the documents were not produced for inspection by June 15, 2017, Plaintiff must file any motion for spoliation by June 30, 2017, which this is.

Plaintiff's first post-deposition requests. *See* Ex. 8.  In addition to asserting baseless objections of vagueness, overbreadth, undue burden, and lack of relevance, Defendants stated that they were nonetheless "searching for responsive documents" consisting of both the notebooks (Request No. 3) and all versions and drafts of the accountant's summary of hours and wages along with the metadata (Request No. 1). *Id.*  Despite the Court's two prior orders directing Defendants to produce those documents, the last requiring production by June 15, 2017, Defendants have still not produced them or made the notebooks available.  With regard to Plaintiff's second post-deposition request, for Plaintiff's time records created by manager Sharma, to which the court directed Defendants to respond by June 15, 2017, Defendants have served no response and have produced no records.  Plaintiff now moves to preclude Defendants from offering the aforesaid documents as evidence, and for an adverse inference jury instruction regarding spoliation of the documents.

"As a general rule, a party which fails to disclose necessary documents or information is not permitted to use such information as evidence, unless there is substantial justification provided for the failure and such failure is harmless." *Bedasie et al v. Mr. Z. Towing, Inc. et al.*, 2016 WL 7839436, at *3 (E.D.N.Y. Apr. 29, 2016) (citing Fed. R. Civ. P. 37(c)(1)); *Triola v. Snow*, 2006 WL 681203, at *1 (E.D.N.Y. Mar. 15, 2006) (noting that "Rule 37 specifically identifies preclusion as a possible sanction where a party offers no substantial justification for late disclosure"); *Funnekotter v. Agricultural Develop. Bank*, 2015 WL 3526661, at *4 (S.D.N.Y. Jun. 3 2015) (granting order precluding party from relying on documents not produced for discovery in violation of court's order and an adverse inference about the contents of those documents).  In this case, Defendants have offered no justification for their non-production of any of the documents at issue, nevertheless a "substantial" one.  Moreover, each of the documents at issue that Plaintiff requested is material to Plaintiff's unpaid wage claims because they directly bear upon Plaintiff's hours worked, and thus Plaintiff's case is harmed by Defendants' failure to produce them in discovery.  Defendant Singh claims that the store manager recorded Plaintiff's hours in the notebooks.  However, Plaintiff testified that his hours were not included in the notebooks when he signed them, strongly implying that Defendants recently fabricated the hours found in the photocopies of the notebook pages that they have produced.  For that reason, Plaintiff's inability to physically inspect the notebooks causes Plaintiff prejudice.  Defendants' failure to produce manager Sharma's "loose sheet" time records causes similar prejudice to Plaintiff, in that they would be direct evidence concerning the hours that Defendants claim he worked, yet Defendants have not produced them at all.  Defendants' failure to provide all versions and drafts of their accountant's summary of Plaintiff's hours and wages prevents Plaintiff from determining if the summary is a recent fabrication or an *ex post facto* document prepared for litigation purposes, as opposed to a contemporaneously-created business record of Plaintiff's hours and wages.  For these reasons, the Court should preclude Defendants from offering as evidence the notebooks, the alleged photocopies thereof (Bates Nos. D-00001-00303), the "loose sheet" time records of manager Sharma, and the accountant's summary of hours (Bates No. D-00304) at any subsequent point in this litigation.

A party seeking sanctions for spoliation, including an adverse inference jury instruction, "must establish '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Coale v. Metro-N.*

3

*Commuter R.Co.*, 621 F. App'x 13, 16 (2d Cir. 2015) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). Where, as here, "an adverse inference instruction is sought on the basis that the evidence was not produced in time for use at trial, the party seeking the instruction must show (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had "a culpable state of mind"; and (3) that the missing evidence is "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp.*, 306 F.3d at 107.

A party's obligation to preserve evidence arises when it knows it is relevant to litigation or it should know that evidence may be relevant to future litigation. *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). An employer has a non-delegable duty under the FLSA to maintain accurate records of its employees' hours. *See* 29 U.S.C. § 211(c); *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 363 (2d Cir. 2011). In this case it is not clear when the documents at issue were lost or destroyed, as Defendants have not disclosed that information. However, Defendants should, at a minimum, have known, even before the action was commenced, that employees' time and wage records are relevant to future litigation for at least the duration of the FLSA's and the NYLL's statutes of limitations. Accordingly, Defendants had an obligation to preserve and produce the records in question both because the records constitute material evidence as to the important factual issue of Plaintiff's work hours and because the Court has ordered them to produce the documents.

As for the "culpable state of mind' factor, it is satisfied by a showing that the evidence was destroyed "knowingly [or grossly negligently], even if without intent to breach a duty to preserve it, or negligently." *Residential Funding Corp. v. DeGeorge*, 306 F.3d 99, 110 (2d Cir. 2002). "In the discovery context, negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding." *In re Pfizer Secs. Litig.*, 288 F.R.D. 297, 314 (S.D.N.Y. 2013). In this case, given the high degree of relevance between Defendants' missing wage and hour records and Plaintiff's overtime claims, Defendants at a minimum were *grossly* negligent in failing to preserve the documents in question such that they have not met their obligation to participate fairly in the discovery phase of this case.

As for the third spoliation factor, a movant must establish that missing evidence has caused him prejudice in his ability to prove or disprove a claim or defense. *Residential Funding Corp.*, 306 F.3d at 108-09. In this case, the hours that Plaintiff worked is a central issue. Plaintiff has demonstrated that he will suffer prejudice in proving his case, and in disproving Defendants' defense that he worked fewer hours than he claims, due to his lack of access to Defendants' time record notebooks, to all versions and drafts of their accountant's summary of hours and wages and the metadata underlying it, and to manager Sharma's "loose sheet" time records, as was set forth above with regard to Plaintiff's argument regarding his motion to preclude. As such, Plaintiff has established all factors necessary for the Court to grant him an adverse jury instruction at trial with regard to the missing documents, as follows: "You have heard that Defendants failed to produce certain records regarding Plaintiff's hours worked. If you find that Defendants could have produced this evidence, and that the evidence was within its control, and that the evidence would have been material in deciding facts in dispute in this case, you are permitted, but not required, to infer that the evidence would have been unfavorable to Defendants. In deciding whether to draw

4

this inference, you should consider whether the evidence not produced would merely have duplicated other evidence already before you. You may also consider whether you are satisfied that Defendants' failure to produce this information was reasonable. Again, any inference you decide to draw should be based on all of the facts and circumstances in this case."[2]

We thank the Court for its attention to this matter.

Respectfully submitted,

 /s/ Shaun M. Malone
Shaun M. Malone, Esq.
*For the Firm*

C: Attorneys for Defendants *via* ECF

---

[2] This instruction was adapted from *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 440 (S.D.N.Y. 2004); *see also Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 383 (2d Cir.2001) (affirming district court's use of a similar charge).