UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
EDMUNDO CALTENCO,                             :
                                                                          :
                            Plaintiff,                          :
                                                                          :            **MEMORANDUM AND ORDER**
               -against-                                       :
                                                                          :                 16 Civ. 1705 (VMS)
G.H. FOOD INC., d/b/a NATURAL GARDEN,   :
and GURDIP SINGH,                                   :
                                                                          :
                            Defendants.                      :
------------------------------------------------------------ x

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Edmundo Caltenco ("Plaintiff") brought this action against Defendants G.H.

Food Inc., doing business as Natural Garden, and Gurdip Singh (hereinafter "Defendants"),

alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law

("NYLL").  See ECF No. 1.  Following a three-day bench trial, the Court concluded that

Defendants had committed multiple FLSA and NYLL violations, including overtime violations

under both laws, as well as minimum-wage, spread-of-hours and wage-statement violations

under the NYLL.  See Caltenco v. G.H. Food Inc. ("Caltenco I"), No. 16 Civ. 1705 (VMS), 2019

WL 4784065 (E.D.N.Y. Sept. 30, 2019).  The Court ordered Defendants to pay Plaintiff a

damages award of $7,749.79 plus interest, a figure based in part on unpaid wages and overtime

for the year 2015, a week in 2010, and a week in 2014.  Id. at *12-13, *15.  The Court

subsequently entered judgment in favor of Plaintiff.  See ECF No. 84.  On appeal, the Second

Circuit vacated and remanded with instructions for the Court to recalculate Plaintiff's regular

rate of pay and re-enter judgment including prejudgment interest.  See Caltenco v. G.H. Food

Inc. ("Caltenco II"), 824 Fed. App'x 88, 90 (2d Cir. 2020).  For the reasons that follow, the

Court recalculates Plaintiff's damages as $7,682.20 plus interest.

## I.      BACKGROUND

The Court will assume the parties' familiarity with the facts and procedural history of the case.  See Caltenco I, 2019 WL 4784065, at *1-2.  What follows is a summary of facts material to the issues specifically analyzed in this Memorandum and Order.

Plaintiff's complaint against Defendants alleged that they willfully violated (1) FLSA overtime provisions; (2) NYLL and NYCRR unpaid overtime provisions; (3) NYLL and NYCRR minimum-wage provisions; (4) NYLL and NYCRR spread-of-hours provisions; and (5) NYLL's requirement to furnish proper wage statements.  See ECF No. 1.  After a bench trial, the Court issued a Memorandum and Order concluding that Plaintiff was entitled to $7,749.79 in damages plus interest.  Caltenco I, 2019 WL 4784065, at *15.

In relevant part, the Court found that Plaintiff was paid hourly, and it found that Plaintiff was paid a "weekly salary" which "generally closely tracked the New York minimum wage" and which "covered" Plaintiff's 62-hour workweek.  Id. at *8.  The Court found that Plaintiff's regular rate was the product of "arms-length negotiations" in which the parties agreed that "his weekly salary would be $550 including overtime based on the 62-hour schedule discussed."  Id.  The Court further found that "Plaintiff's hourly rate began as $7.50 for his regular hours, and $11.25 for his overtime hours rounded up to $550."  Id.  The Court also found that Defendants tracked employees' hours by recording each employee's arrival and departure time on a daily basis, and, at the end of the week, by "enter[ing] the names, hours and days into a composition notebook to calculate the employees' pay."  Id. at *6.  The Court credited these records as being "accurate records of Plaintiff's hours worked and wages paid."  Id.  The Court found that "[t]he contemporaneous wage records, signed by Plaintiff, which set out Plaintiff's schedule, total hours, and compensation further support the existence of this agreement between the parties" and

that "this agreement included an overtime premium." Id. at *8.  The Court further found that every time Plaintiff negotiated a raise wherein his weekly salaries were increased to $575.00, $600.00 and $630.00, they were "in furtherance of their prior agreement regarding his hours, schedule, wages and overtime." Id.

On appeal, the Second Circuit found that the Court did not clearly err in finding that Plaintiff was paid hourly. Caltenco II, 824 Fed. App'x at 89.  The Court of Appeals rejected Plaintiff's argument that 29 C.F.R. § 778.113 or 29 C.F.R. § 778.325 applied in this case because under those regulations, a wage is considered a "weekly salary" if "the employee is employed solely on a weekly salary basis," independent of the hours worked in the week, unlike Plaintiff here. See 29 C.F.R. § 778.113.

The Second Circuit found that the Court erred in its calculation of Plaintiff's "regular rate" of hourly pay, which it defined as the hourly rate when the employee is "employed on the basis of a single hourly rate." See 29 C.F.R. § 78.110(a); Caltenco II, 824 Fed. App'x 88 at 89. "The 'regular rate' is important for calculating damages, including overtime pay, which is one and a half times the 'regular rate.'" Caltenco II, 824 Fed. App'x at 89 (citing 29 C.F.R. § 207(a)(1)) (further citations omitted).  In other words, "[t]he term regular rate shall mean the amount that the employee is regularly paid for each hour of work." 12 NYCRR § 142-2.16 (emphasis in original).  "Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts." Caltenco II, 824 Fed. App'x 88 at 89 (quoting Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424-25 (1945)).

Using the week of August 8, 2010, as an example, the Second Circuit stated that the Court's finding that Plaintiff's regular rate is "[b]ased upon his negotiated hourly rates of $7.50 per regular hour and $11.25 per overtime hour," Caltenco I, 2019 WL 4784065, at *12, was inconsistent with the Court's other finding that "Plaintiff's hourly rate began as $7.50 for his regular hours, and $11.25 for his overtime hours rounded up to $550" for his usual 62-hour workweek, id. at *8. Caltenco II, 824 Fed. App'x at 89-90 (emphasis added by Second Circuit). As such, the Second Circuit sua sponte found the Court erred when it failed to include the "round up" amount when calculating Plaintiff's regular rate. Id. The Second Circuit also noted with respect to the damages calculation for the week of April 10, 2014, "the District Court should have calculated Caltenco's actual regular rate based on his then-weekly wage of $600." Id. at 90.

Plaintiff also appealed the Court's judgment, ECF No. 84, on the basis that the judgment did not properly calculate or reflect prejudgment interest. Compare Caltenco I, 2019 WL 4784065, at *15 (ordering Defendants "to pay Plaintiff a total damages award of $7,749.79, which includes $973.24 in unpaid wages, $414.75 in unpaid spread-of-hours premiums, $1,361.80 in liquidated damages, and $5,000 in statutory damages for violating the wage statement provision of the NYLL, plus pre-judgment interest under the NYLL calculated at $0.31 per day from July 2, 2015, $0.01 per day from August 9, 2010, and, $0.02 per day from April 20, 2014, until the date judgment is entered."), with ECF No. 84 (judgment in the "amount of [s]even thousand, seven hundred forty-nine and 79/100 dollars ($7,749.79), which includes prejudgment interest at the rate of 9.00%, plus post judgment interest at the rate of 1.59% per annum, along with costs") (emphases added). The Second Circuit vacated and remanded the

4

judgment with instructions to re-enter judgment including prejudgment interest.  Caltenco II, 824

Fed. App'x at 90.

     After entry of mandate from the Court of Appeals, see ECF No. 96, the Court held a

hearing with the parties on the issue of damages and requested supplemental submissions

regarding the damage calculations.  See ECF Nos. 98, 104.

## II.    DISCUSSION

### a.  Summary Of The Parties' Damages Positions

     First, Plaintiff argues that in order to properly recalculate Plaintiff's regular rate of pay

for each week, the Court must "divide the total remuneration . . . in any workweek by the total

number of hours actually worked."  ECF No. 98 at 3 (quotation, citations & alterations omitted).

Plaintiff also argues that the Court must apply 29 C.F.R. § 778.110(a) to calculate Plaintiff's

overtime rate, which provides that "in addition to the straight time hourly earnings, an [overtime]

sum [is] determined by multiplying one-half the hourly rate by the number of hours worked in

excess of 40 in the week."  ECF No. 98 at 3 (alterations in original).  As to each week worked,

Plaintiff therefore proceeds to calculate the regular rate of pay by dividing the total weekly

remuneration by the number of hours worked that week, then calculates the overtime rate of pay

by multiplying the regular rate derived times 1.5.  See ECF No. 98 at 4.  Plaintiff then calculates

Plaintiff's damages for wages owed for each week by: 1) multiplying up to 40 hours worked by

the regular rate; 2) multiplying any hours worked above 40 by the overtime rate; 3) adding the

amounts from (1) and (2) together; and 4) subtracting the wages already paid by Defendants.

See id.  For example, using the week of January 5, 2015, to January 11, 2015, Pl. 7 at D252,

where Plaintiff worked 62 hours and was paid $600.00, Plaintiff divides $600.00 by 62 to

compute a regular rate of pay of $9.68.  See ECF No. 98-1 at 4.  Plaintiff then (i) multiplies 40

hours by $9.68 for a total of $387.10 and (ii) multiplies 22 hours by $14.52 (which is $9.68 multiplied by 1.5) for a total of $319.35.  See id.  Plaintiff then adds $387.10, and $319.35 together to conclude that Plaintiff should have been paid $706.45 for the week of January 5, 2015, to January 11, 2015, Pl. 7 at D252.  See id.  As Plaintiff was already paid $600.00, Plaintiff concludes he is owed $106.45 for this week ($706.45 minus $600.00).  See id.  Under Plaintiff's approach, Plaintiff's "regular rate" would vary from week to week based on the number of hours he worked, and it would not, in fact, be "regular."

Second, Plaintiff also argues that "because the Court applied the same incorrect methodology that the Second Circuit held was in error for every week that Plaintiff worked to calculate Plaintiff's damages, the Second Circuit's decision must be applied to every week that Plaintiff worked and not just the weeks that Plaintiff's hours or weekly pay varied [from his scheduled hours]."  ECF No. 98 at 4.

Defendants disagree with Plaintiff on both points.  As to Plaintiff's method of calculating the regular rate by dividing the total weekly remuneration by the number of hours worked that week, Defendants argue Plaintiff's method "[is] based on the premise that Plaintiff was paid a straight-time regular rate of pay for all hours worked each week," and "Plaintiff completely disregards the District Court's clear finding that Plaintiff was paid a regular rate for all hours up to forty and an overtime premium for all hours worked over forty."  See ECF No. 104 at 3. Defendants propose that the correct method to derive the regular rate of pay is to divide the total weekly remuneration for Plaintiff's typical 62-hour workweek by 73, which accounts for the time-and-a-half overtime premium for the 22 hours worked over 40 in each workweek.  See id. at 2 & n.2.  Defendants' proposed method for calculating the damages once the regular rate is calculated otherwise matches Plaintiff's proposed method.  See id. at 2.  By way of example,

6

using the week of June 7, 2010, to June 13, 2010, Pl. 7 at D17, during which Plaintiff worked 52 hours and his negotiated weekly pay was $550.00 for a 62-hour workweek of which 22 hours were paid at a one-and-a-half overtime premium, the regular rate of pay would be derived from dividing $550.00 by 73, which is $7.53.  See ECF No. 104 at 2.  Plaintiff's overtime rate would be $7.53 multiplied by 1.5, which is $11.30.  Id.  Defendants then (i) multiply 40 hours by $7.53 for a total of $301.20 and (ii) multiply 12 hours by $11.30 for a total of $135.60.  Id.  Defendants then add $301.20 and $135.60 together to conclude that Plaintiff should have been paid $436.80 for working 52 hours during the week of June 7, 2010, to June 13, 2010.  Pl. 7 at D17; ECF No. 104 at 2. As Plaintiff was already paid $452.33, Defendants conclude he is not owed any wages for this week.  See id.

Defendants also disagree that the Second Circuit's Summary Order requires a recalculation of every week of Plaintiff's employment.  Id. at 3.  Defendants argue that the reasonable interpretation of the Second Circuit's Summary Order is that only in weeks during which Plaintiff worked less than his normal 62 scheduled hours should the Court recalculate the damages to account for the weekly "round up."  See id. at 3.  Defendants highlight nine weeks prior to 2015 during which Plaintiff worked less than 62 hours per week, only two weeks of which Plaintiff was underpaid using the revised damages calculation.  Id. at 2; ECF No. 104-1 at 1.  Defendants also recalculate damages for every workweek in 2015.  See ECF No. 104-1.

The respective revised damages calculations from the parties lead to dramatically different results.  Plaintiff concludes he is entitled to a total of $30,200.25 in compensatory damages (the Court had calculated of a total of $1,387.99 in compensatory damages for both unpaid wages and unpaid spread-of-hours premiums), in addition to liquidated damages,

statutory penalties and prejudgment interest.[1]  See ECF No. 98 at 5; Caltenco I, 2019 WL 4784065, at *15.  Defendants' revised calculations focus only on unpaid wages, and Defendants conclude that Plaintiff is entitled to $939.58 (the Court had calculated an award of $973.24 in unpaid wages).  See ECF No. 104 at 3; Caltenco I, 2019 WL 4784065, at *8.

### b.  Motion For Sanctions

Defendants argue that Plaintiff's "unreasonable and irrational revised damage calculations prevented the parties from settling this minor issue without the need for these letter briefs."  ECF No. 104 at 4.  Defendants further argue that Plaintiff's recalculations are not supported by "Judge Scanlon's decision nor the 2nd Circuit's decision," and that Defendants communicated this to Plaintiff's counsel while counsel were trying to negotiate a resolution to the damages.  See id.  Without citing to any specific authority, Defendants request that "Plaintiff be sanctioned for this misconduct and required to pay Defendants' attorneys' fees that have accrued in opposing this unnecessary motion."  See id.

### c.  Applicable Law

#### i.  Scope Of Remand

The mandate rule, a "branch of the law-of-the-case doctrine," holds that "where issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court."  Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006) (quotation & citations omitted).  "The mandate rule 'compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court.'"  United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)

---

[1] Plaintiff states that based on his recalculations, Plaintiff's regular rate of pay never fell below minimum wage, so therefore, he is no longer entitled to spread-of-hours pay damages that the Court previously awarded him.  ECF No. 98 at 5 n.3.

(quoting <u>United States v. Bell</u>, 5 F.3d 64, 66 (4th Cir. 1993) (emphasis added by Second Circuit).

"Likewise, where an issue was ripe for review at the time of an initial appeal but was nonetheless

foregone, the mandate rule generally prohibits the district court from reopening the issue on

remand unless the mandate can reasonably be understood as permitting it to do so." <u>Id.</u> (citation

omitted).

### ii.  Regular Rate Of Pay

"When calculating damages in wage-and-hour cases, the starting point is the employee's

'regular rate' of pay," <u>i.e.</u>, "the hourly rate when 'the employee is employed on the basis of a

single hourly rate.'" <u>Caltenco II</u>, 824 Fed. App'x at 89 (quoting 29 C.F.R. § 778.108; 29 C.F.R.

§ 778.110(a)).  "Once the parties have decided upon the amount of wages and the mode of

payment the determination of the regular rate becomes a matter of mathematical computation,

the result of which is unaffected by any designation of a contrary 'regular rate' in the wage

contracts." <u>Id.</u> (quotation omitted) (quoting <u>Walling</u>, 325 U.S. at 424-25).  "The regular rate by

its very nature must reflect all payments which the parties have agreed shall be received

regularly during the workweek, exclusive of overtime payments." <u>Walling</u>, 325 U.S. at 424.

"[T]he employer and employee are free to establish this regular rate at any point and in any

manner they see fit." <u>Id.</u>

Although "[f]or purposes of FLSA, '[t]here is a rebuttable presumption that a weekly

salary covers 40 hours; the employer can rebut the presumption by showing an employer-

employee agreement that the salary cover a different number of hours.'" <u>Moon v. Kwon</u>, 248 F.

Supp. 2d 201, 207 (S.D.N.Y. 2002) (quoting <u>Giles v. City of New York</u>, 41 F. Supp. 2d 308, 317

(S.D.N.Y. 1999)).  Moreover, "employers and employees may expressly agree to a weekly salary

that includes a regular rate as well as an overtime premium." <u>Ibarra v. HSCS Corp.</u>, No. 10 Civ.

5109 (KBF), 2012 WL 3964735, at *2 (S.D.N.Y. Sept. 10, 2012).  "In the absence of any written instrument memorializing the parties' intentions, the [c]ourt must infer the terms of their agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record."  Moon, 248 F. Supp. 2d at 206.

### iii.  Sanctions

The court has both inherent and statutory powers to sanction attorneys and parties whose behavior unreasonably threatens the orderly management and resolution of a case.  See Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78 (2d Cir. 2000).  The court's statutory power is derived from 28 U.S.C. § 1927 which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  The court's inherent powers emanate from "the practical necessity that courts be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Revson, 222 F.3d at 78 (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)).

Sanctions are properly awarded under 28 U.S.C. § 1927 when an "attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  Id. at 79 (quotation & emphasis omitted) (quoting Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir 1986)).  Sanctions are proper under the court's inherent power, which can be levied against both attorneys and parties, where the court finds that "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay."  Enmon v. Prospect Cap. Corp., 675 F.3d 138, 143 (2d Cir. 2012) (quotation omitted) (quoting Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999)).  The required finding

of bad faith can only be inferred from a party's actions when the actions are "so completely without merit" that the court must conclude that they were taken for an improper purpose.  Id. (quotation omitted) (quoting Schlaifer Nance, 194 F.3d at 336).

Rule 11(b) provides that an attorney who "present[s] to the court a pleading, written motion, or other paper . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Fed. R. Civ. P. 11(b), (1).  When a court "determines that Rule 11(b) has been violated," it may, after giving "notice and a reasonable opportunity to respond . . . impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed R. Civ. P. 11(c)(1).  The court may impose sanctions either in response to a motion seeking sanctions or sua sponte.  Fed. R. Civ. P. 11(c)(2), (3).  Sanctions imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c)(4).

## III.   ANALYSIS

### a.  Plaintiff's Pay

#### i.  This Court Cannot Revisit The Findings Affirmed By The Court Of Appeals

As the Court of Appeals highlighted in its Summary Order, this Court "found that Caltenco was paid hourly, not weekly."  Caltenco II, 824 Fed. App'x at 89.  "Caltenco was paid a 'weekly salary' which 'generally closely tracked the New York minimum wage' and which

11

'covered' Caltenco's 62-hour workweek." Id. (citation omitted).  The Court found that

Plaintiff's regular rate was the product of "arms-length negotiations" in which the parties agreed

that "his weekly salary would be $550 including overtime based on the 62-hour schedule

discussed." Caltenco I, 2019 WL 4784065, at *8.  "The Court found further that 'Plaintiff's

hourly rate began as $7.50 for his regular hours, and $11.25 for his overtime hours rounded up to

$550.'" Caltenco II, 824 Fed. App'x at 89 (citation omitted).  "The District Court also found that

Defendants tracked employees' hours by recording each employee's arrival and departure time

on a daily basis, and then, at the end of the week, 'enter[ing] the names, hours and days into a

composition notebook to calculate the employees' pay.'" Id. (citation omitted).  "The District

Court credited these records as being 'accurate records of Plaintiff's hours worked and wages

paid.'" Id. (citation omitted).  The Court found that "[t]he contemporaneous wage records,

signed by Plaintiff, which set out Plaintiff's schedule, total hours, and compensation further

support the existence of this agreement between the parties" and that "this agreement included an

overtime premium." Caltenco I, 2019 WL 4784065, at *8.  The Court further found that every

time Plaintiff negotiated a raise wherein his weekly salaries were increased to $575.00, $600.00

and $630.00, they were "in furtherance of their prior agreement regarding his hours, schedule,

wages and overtime." Id.  The Court of Appeals did not find error with any of these findings.

See Caltenco II, 824 Fed. App'x at 89.  The only error with respect to the damage calculations

found by the Court of Appeals was that this Court failed to take into account the minimal "round

up" values when computing Plaintiff's regular rate of pay.  See id. at 89.  The Court of Appeals'

Summary Order did not reopen the liability or factual findings, so it would be incorrect of the

Court to revisit them now.  See Ben Zvi, 242 F.3d at 95.

Yet, Plaintiff argues this Court must "determine what Plaintiff's regular rate of pay is for each week that he worked by dividing the total remuneration . . . in any workweek by the total number of hours actually worked."  ECF No. 98 at 3 (citations, quotations & alterations omitted).  In other words, Plaintiff proposes the Court calculate Plaintiff's regular rate of pay for each week on the premise that none of the hours worked was compensated at an overtime premium.  This is because, Plaintiff argues, "this Court based its damage calculations on the improper premise that such damages should be calculated based on what the Court found the parties agreed to (i.e., the arbitrary label chosen by the parties) as opposed to what was done in actual practice."  ECF No. 108 at 2.  Plaintiff's methodology does not take into account the Court's affirmed finding that in actual practice, and based on Plaintiff's negotiated agreements with his employer, Plaintiff was paid an agreed-upon hourly rate and Plaintiff's weekly pay and regular workweek included hours of work performed at an overtime premium of one and a half times Plaintiff's regular rate.

First, the Court cannot adopt Plaintiff's proposal because Plaintiff already argued for his proposed method of calculating the regular rate on appeal and lost before the Court of Appeals.  On appeal, Plaintiff argued that "the District Court erred as a matter of law in concluding that Plaintiff's weekly salary included overtime premiums," Caltenco v. G.H. Food Inc., No. 19-3601, ECF No. 33 at 12 (2d Cir. Feb. 2, 2020); see id. at 24-39 ("The District Court impermissibly deviated from the standard regular rate calculation based on its finding that the parties agreed to include overtime hours at an overtime premium that were, in essence, folded or blended into Plaintiff's weekly salary . . . ."); and (ii) "the regular rate must be derived by dividing Plaintiff's weekly salary by the hours that Plaintiff actually worked each week," id. at 13; see id. at 16-24.  Plaintiff also presented to the Court of Appeals his proposed regular rates for each of Plaintiff's negotiated weekly salaries by dividing them strictly by 62, without

accounting for an overtime premium.  See id. at 22.  The Court of Appeals rejected Plaintiff's

arguments.  See Caltenco II, 824 Fed. App'x at 90 ("We have reviewed all of the Appellant's

remaining arguments and find them to be without merit."); see also id. at 89 ("That said,

Caltenco is right that the District Court calculated his damages incorrectly—but for different

reasons.") (emphasis added).

Second, Plaintiff also already argued and lost on appeal the position that this Court

erroneously calculated Plaintiff's 2015 damages to be the difference of Plaintiff's salary and the

statutorily applicable minimum wage, requesting that the Court of Appeals remand "with

instruction to calculate the regular rate on a week-to-week basis consistent with 29 C.F.R. §

778.109 . . . by dividing Plaintiff's weekly salary for the time period by the wages actually

worked in that specific week, and then awarding overtime damages at one-half the regular rate

for all hours Plaintiff worked in excess of forty hours in any week."—the same method Plaintiff

now proposes in his supplemental damages briefing.  Caltenco v. G.H. Food Inc., No. 19-3601,

ECF No. 33 at 39 (2d Cir. Feb. 2, 2020); see ECF No. 98-1 at 4-5.  The Court of Appeals did not

accept this argument.  Moreover, if the Court of Appeals had accepted Plaintiff's method of

calculation, Plaintiff's regular rate would not have fallen below minimum wage as the Court

found it had at certain times.  See ECF No. 98 at 5 n.3.  Therefore, Defendants would no longer

be liable for minimum-wage or spread-of-hours violations under the NYLL.  Yet, as discussed

supra, the Court of Appeals did not reopen this Court's liability findings.

### ii. This Court Must Award Plaintiff Damages Based On A Regular Rate Of Pay That Incorporates The Round Up

Plaintiff argues that the Court of Appeals' citation to 29 C.F.R. § 778.110(a), the general

principle for computing overtime rates based on the regular rate for an hourly rate employee,

supports Plaintiff's methodology.  Plaintiff argues that "this Court must apply § 778.110(a) to

14

calculate Plaintiff's overtime rate," which states that an overtime sum is "determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week." ECF No. 98 at 3; 29 C.F.R. § 778.110(a).  This is precisely what the Court does herein to compute Plaintiff's overtime rate—by finding his regular rate and overtime rate that must be one and a half times the regular rate.  What 29 C.F.R. § 778.110(a) does not say is that the Court must assume, despite its factual findings to the contrary, that Plaintiff's weekly pay did not account for his overtime rate.  Absent from the Court of Appeals' Summary Order is any statement that the Court should have calculated Plaintiff's regular rate as the quotient of Plaintiff's weekly pay divided by the number of hours worked that week.

What the Court of Appeals does say in its Summary Order is instructive.  For the week ending August 8, 2010, Plaintiff worked 52[2] hours and was paid $452.33.  Pl. 7 at D25; Caltenco I, 2019 WL 4784065, at *12.  According to Plaintiff, the proper calculation of Plaintiff's regular rate is to divide $452.36[3] by 52, which is $8.70.  ECF No. 98-1 at 1.  This is not consistent with the Court of Appeals' direction which only instructed that the Court "erred when it failed to include the 'round up' to $550 when making its calculations."  Caltenco II, 824 Fed. App'x at 89.  If the method Plaintiff proposes were consistent with the appellate decision, the "'round up' to $550" would be irrelevant to the calculation of his regular rate for the week ending August 8, 2010.  See id.  As described more fully in Section III.b., the Court finds that the proper calculation of Plaintiff's regular rate for this week is $550.00 divided by 73, which equals $7.53.

---

[2] As Defendants point out, the Court incorrectly stated Plaintiff worked 56 hours during the week ending August 8, 2010, in its Memorandum and Order, but the timesheet shows 52 hours.  ECF No. 104 at 2 n.3; Pl. 7 at D25.  Plaintiff agrees he worked 52 hours the week ending August 8, 2010.  See ECF No. 98-1 at 1.

[3] Plaintiff lists his pay for this week as $452.36 instead of $452.33 in his spreadsheet.  ECF No. 98-1 at 1.  For the sake of this example, the Court uses Plaintiff's number.

Plaintiff's overtime rate is $11.30 ($7.53 multiplied by 1.5).  Likewise, the Court of Appeals instructed that, for the week ending April 20, 2014, "the District Court should have calculated Caltenco's actual regular rate based on his then-weekly wage of $600." Caltenco II, 824 Fed. App'x at 90 (emphasis added).  For the week ending April 20, 2014, Plaintiff worked 59 hours and was paid $500.00.  Pl. 7 at D216.  According to Plaintiff, the proper calculation of Plaintiff's regular rate is to divide $500.00 by 59, which is $8.47.  ECF No. 98-1 at 4.  Again, if Plaintiff were correct, then the Court of Appeals' instruction to calculate Plaintiff's regular rate for the week of April 20, 2014, "based on his then-weekly wage of $600" would be impotent.  The Court finds that the proper calculation of Plaintiff's regular rate for this week is $600.00 divided by 73, which equals $8.22.  Plaintiff's overtime rate is $12.33 ($8.22 multiplied by 1.5).

The Court of Appeals' citations to Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419 (1945), and Gorman v. Consolidated Edison Corporation, 488 F.3d 586 (2d Cir. 2007), are also instructive.  Gorman supports the Court's method of computing Plaintiff's regular rate by accounting for multiple rates within Plaintiff's weekly salary for his regular 62-hour workweek.  See Caltenco II, 824 Fed. App'x at 89.  Although Gorman involved multiple non-overtime rates of pay, its principle is clear: the court will determine a plaintiff's regular rate of pay from his negotiated pay agreement to account for the compensation actually and regularly received.  In Gorman, the plaintiffs argued that they were only paid a single hourly rate, regardless of the shift actually worked and despite the fact their contract established three rates of pay depending on the shift.  See id. at 596.  The defendant used a "weighted average method" for computing the plaintiffs' regular rate to encompass these shift differentials.  Id.  The Court of Appeals affirmed the district court's grant of summary judgment to the defendant "[b]ecause

16

[defendant]'s weighted average method adequately accounts for the compensation actually received by employees in calculating the regulate rate." Id. at 597.

Walling further supports the Court's method of calculating Plaintiff's regular rate of pay by tying it to Plaintiff's "regular rate under [the] normal circumstances," i.e., his negotiated weekly pay based on his hourly and overtime rates that Plaintiff was regularly paid throughout the course of his employment. Cf. 325 U.S. 419 at 426 (rejecting regular rate fixed by contract because it "does not constitute the hourly rate actually paid for the normal, non-overtime workweek"). Moreover, Walling acknowledges that the regular rate "must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." Id. at 424. This supports Defendants' position, but conflicts with Plaintiff's proposed method for calculating the regular rate by including wages that were intended to compensate for overtime into the regular rate.

In summary, this Court cannot relitigate its finding that there was an agreement between Plaintiff and his employer that his negotiated weekly salaries were intended to compensate 40 hours of work paid at a regular rate and 22 hours of work paid at an overtime premium of one-and-a-half times his regular rate, nor its conclusion that Plaintiff's regular rates of pay take the same into account. See Caltenco I, 2019 WL 4784065, at *8-9. The only aspect the Court need address in the calculations is recalculating Plaintiff's regular rates of pay to account for the minimal "round up" amounts, which it turns to in Section III.b.i, infra.

**b. Damages Recalculation**

**i. Unpaid Wages**

As detailed in the Court's Memorandum and Order, the Court found Plaintiff's weekly salaries to be $550.00 between February 8, 2010, through August 22, 2011; $575.00 between

August 23, 2011, through September 10, 2012; $600.00 between September 11, 2012, through

April 20, 2015; and $630.00 between April 21, 2015, through December 29, 2015. Caltenco I,

2019 WL 4784065, at *8-9. The Court also noted that the statutory hourly minimum wage was

$7.25, and the overtime rate was $10.875 from February 8, 2010, through December 13, 2013;

the statutory hourly minimum wage was $8.00, and the overtime rate was $12.00 from January 1,

2014, through December 31, 2014; and the statutory hourly minimum wage was $8.75, and the

overtime rate was $13.125 from January 1, 2015, through December 29, 2015. Id.

The Court recalculates Plaintiff's regular rate of pay by dividing his negotiated weekly

salaries by 73, which accounts for 40 hours of work paid at a regular rate and 22 hours of work

paid at an overtime premium of one-and-a-half times the regular rate of pay. Summarized below

are the statutory minimum wage and overtime rates during the applicable period and Plaintiff's

regular rates and overtime rates based on his 62-hour workweek recalculated to account for the

"round up" amounts. As evidenced by the chart below, Plaintiff is generally not entitled to

damages between 2010 through 2014, except for two weeks with payment calculation errors. As

to 2015, Plaintiff is entitled to damages because his weekly salary based on 40 hours of regular

work and 22 hours of overtime work paid at a premium fell below the minimum wage. Plaintiff

was entitled to a minimum wage of $638.75 for his usual 62-hour schedule throughout 2015. He

was therefore entitled to additional wages based on his hours worked each week in 2015.

| Time Period | Hourly Min. Wage per Statute | **PL Revised Regular Rate** | Overtime Wage per Statute | **PL Revised Overtime Rate** | Weekly Min. Wage Salary | PL Weekly Salary |
|---|---|---|---|---|---|---|
| 2/8/10-8/22/11 | 7.25 | **7.53** | 10.875 | **11.30** | $529.25 | $550.00 |
| 8/23/11-9/10/12 | 7.25 | **7.88** | 10.875 | **11.82** | $529.25 | $575.00 |
| 9/11/12-12/31/13 | 7.25 | **8.22** | 10.875 | **12.33** | $529.25 | $600.00 |
| 1/1/14-12/31/14 | 8.00 | **8.22** | 12.00 | **12.33** | $584.00 | $600.00 |
| 1/1/15-4/20/15 | 8.75 | **8.22** | 13.125 | **12.33** | $638.75 | $600.00 |
| 4/21/15-12/29/15 | 8.75 | **8.63** | 13.125 | **12.95** | $638.75 | $630.00 |

As for any individual weeks prior to 2015 during which Plaintiff was underpaid based on his negotiated regular and overtime rates, the Court recalculates the damages based on Plaintiff's revised rates of pay and finds Plaintiff entitled to the following additional wages for these two weeks:

| Pl. 7 Bates | Time Period | Hrs Worked | PL Revised Regular Rate | PL Revised Overtime Rate | PL Paid | What PL Should Have Been Paid | Difference Between What PL Was Paid and What PL Should Have Been Paid |
|---|---|---|---|---|---|---|---|
| D129 | 7/30/12-8/5/12 | 46.33 | $7.88 | $11.82 | $383.72 | $389.86 | **($6.14)** |
| D216 | 4/14/14-4/20/14 | 59 | $8.22 | $12.33 | $500.00 | $563.01 | **($63.01)** |
|  |  |  |  |  |  | **Total Owed:** | **$69.15** |

A revised chart calculating Plaintiff's damages for 2015 is below:[4]

---

[4] This chart corrects the previous chart in the Court's Memorandum and Order that listed the week of February 16, 2015, to February 22, 2015, Pl. 7 at D258, twice; and listed 62 hours of work instead of 61 for the week of November 23, 2015, to November 29, 2015, Pl. 7 at D298; and it recalculates the difference between the rounded up wages paid and minimum wage for hours worked in weeks when Plaintiff was paid more than the minimum wage, which does not affect the damages calculation as he is not owed damages for those weeks, Pl. 7 at D267-D276, D283, D303.  See Caltenco I, 2019 WL 4784065, at *12.

| Pl. 7 Bates | Time Period | Hrs Worked | Wages Paid | Min. Wage Plaintiff Should Have Been Paid | Difference Between Wages Paid and Min. Wage |
|---|---|---|---|---|---|
| D251 | 12/29/14-1/4/15 | 62 | $600.00 | $614.75 | **($14.75)** |
| D252 | 1/5/15-1/11/15 | 62 | $600.00 | $638.75 | **($38.75)** |
| D253 | 1/12/15-1/18/15 | 62 | $600.00 | $638.75 | **($38.75)** |
| D254 | 1/19/15-1/25/15 | 62 | $600.00 | $638.75 | **($38.75)** |
| D255 | 1/26/15-2/1/15 | 62 | $600.00 | $638.75 | **($38.75)** |
| D256 | 2/2/15-2/8/15 | 62 | $600.00 | $638.75 | **($38.75)** |
| D257 | 2/9/15-2/15/15 | 62 | $600.00 | $638.75 | **($38.75)** |
| D258 | 2/16/15-2/22/15 | 62 | $600.00 | $638.75 | **($38.75)** |
| D259 | 2/23/15-3/1/15 | 62 | $600.00 | $638.75 | **($38.75)** |
| D260 | 3/2/15-3/8/15 | 62 | $600.00 | $638.75 | **($38.75)** |
| D261 | 3/9/15-3/15/15 | 61 | $600.00 | $625.63 | **($25.63)** |
| D262 | 3/16/15-3/22/15 | 62 | $600.00 | $638.75 | **($38.75)** |
| D263 | 3/23/15-3/29/15 | 62 | $600.00 | $638.75 | **($38.75)** |
| D264 | 3/30/15-4/5/15 | 62 | $600.00 | $638.75 | **($38.75)** |
| D265 | 4/6/15-4/12/15 | 59 | $600.00 | $599.38 | $0.62 |
| D266 | 4/13/15-4/19/15 | 62 | $600.00 | $638.75 | **($38.75)** |
| D267 | 4/20/15-4/26/15 | 60 | $630.00 | $612.50 | $17.50 |
| D268 | 4/27/15-5/3/15 | 60 | $630.00 | $612.50 | $17.50 |
| D269 | 5/4/15-5/10/15 | 60 | $630.00 | $612.50 | $17.50 |
| D270 | 5/11/15-5/17/15 | 52 | $630.00 | $507.50 | $122.50 |
| D271 | 5/18/15-5/24/15 | 60 | $630.00 | $612.50 | $17.50 |
| D272 | 5/25/15-5/31/15 | 60 | $630.00 | $612.50 | $17.50 |
| D273 | 6/1/15-6/7/15 | 60 | $630.00 | $612.50 | $17.50 |
| D274 | 6/8/15-6/14/15 | 60 | $630.00 | $612.50 | $17.50 |
| D275 | 6/15/15-6/21/15 | 60 | $630.00 | $612.50 | $17.50 |
| D276 | 6/22/15-6/28/15 | 60 | $630.00 | $612.50 | $17.50 |
| D277 | 6/29/15-7/5/15 | 62 | $630.00 | $638.75 | **($8.75)** |
| D278 | 7/6/15-7/12/15 | 62 | $630.00 | $638.75 | **($8.75)** |
| D279 | 7/13/15-7/19/15 | 62 | $630.00 | $638.75 | **($8.75)** |
| D280 | 7/20/15-7/26/15 | 62 | $630.00 | $638.75 | **($8.75)** |
| D281 | 7/27/15-8/2/15 | 62 | $630.00 | $638.75 | **($8.75)** |
| D282 | 8/3/15-8/9/15 | 62 | $630.00 | $638.75 | **($8.75)** |
| D283 | 8/10/15-8/16/15 | 52 | $525.00 | $507.50 | $17.50 |
| D284 | 8/17/15-8/23/15 | 62 | $630.00 | $638.75 | **($8.75)** |
| D285 | 8/24/15-8/30/15 | 62 | $630.00 | $638.75 | **($8.75)** |
| D286 | 8/31/15-9/6/15 | 62 | $630.00 | $638.75 | **($8.75)** |
| D287 | 9/7/15-9/13/15 | 62 | $630.00 | $638.75 | **($8.75)** |
| D288 | 9/14/15-9/20/15 | 62 | $630.00 | $638.75 | **($8.75)** |

| D289 | 9/21/15-9/27/15 | 62 | $630.00 | $638.75 | ($8.75) |
|---|---|---|---|---|---|
| D290 | 9/28/15-10/4/15 | 62 | $630.00 | $638.75 | ($8.75) |
| D291 | 10/5/15-10/11/15 | 65.5 | $580.00 | $684.69 | ($104.69) |
| D292 | 10/12/21-10/18/21 | 62 | $630.00 | $638.75 | ($8.75) |
| D293 | 10/19/21-10/25/15 | 62 | $630.00 | $638.75 | ($8.75) |
| D294 | 10/26/15-11/1/15 | 62 | $630.00 | $638.75 | ($8.75) |
| D295 | 11/2/15-11/8/15 | 62 | $630.00 | $638.75 | ($8.75) |
| D296 | 11/9/15-11/15/15 | 62 | $630.00 | $638.75 | ($8.75) |
| D297 | 11/16/15-11/22/15 | 62 | $630.00 | $638.75 | ($8.75) |
| D298 | 11/23/15-11/29/15 | 61 | $620.00 | $625.63 | ($5.63) |
| D299 | 11/30/15-12/6/15 | 62 | $630.00 | $638.75 | ($8.75) |
| D300 | 12/7/15-12/13/15 | 62 | $630.00 | $638.75 | ($8.75) |
| D301 | 12/14/15-12/20/15 | 62 | $630.00 | $638.75 | ($8.75) |
| D302 | 12/21/15-12/27/15 | 62 | $630.00 | $638.75 | ($8.75) |
| D303 | 12/28/15-12/29/15 | 20.5 | $180.00 | $179.38 | $0.62 |
| | | | | **Total Owed:** | **$855.70** |

The Court concludes that Plaintiff is entitled to $924.85 ($69.15 + $855.70) in unpaid wages.

### ii. Spread-Of-Hours Premiums

An employee earning minimum wage is entitled to an extra hour's pay at that minimum-wage rate for any day which "the spread of hours exceeds 10." 12 NYCRR § 146-1.6; see Guerrero v. 79th St. Gourmet & Deli, Inc., No. 18 Civ. 4761 (ARR) (ST), 2019 WL 4889591, at *8 (E.D.N.Y. Sept. 10, 2019) ("[E]mployees who earn more than the minimum wage rate are generally not entitled to spread-of-hours pay . . . .") (citations omitted), R&R adopted, 2019 WL 4887914 (Oct. 3, 2019). The minimum wage was $8.75 per hour from December 31, 2014, through the end of Plaintiff's employment in December 2015. See Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 499 (S.D.N.Y. 2017), aff'd, 752 Fed. App'x 33 (2d Cir. 2018). In 2015, Plaintiff worked more than 10 hours in a given shift on 54 occasions. See Pl. 7 at D252-D303. Of these occasions, 11 occurred during weeks in which Plaintiff was paid more than the minimum-wage rate, see Pl. 7 at D265, D267-D273, D276, D283, leaving 43 instances in which

21

Plaintiff should have received spread-of-hours payments at the minimum hourly wage rate of $8.75 in 2015.[5]

In addition, there was one other week in which Plaintiff was not compensated at or above minimum wage.[6]  During the week ending April 20, 2014, Plaintiff was paid less than the minimum wage that week, and he worked more than 10 hours per day for five days.  See Pl. 7 at D216.  He is thus entitled to five instances of spread-of-hours pay at the minimum wage at that time ($8.00).  Based on the above, the Court concludes that in addition to the amounts described supra, Plaintiff is entitled to $416.25 ((5 * $8.00 = $40.00) + (43 * 8.75 = $376.25)) in unpaid spread-of-hours premiums.

### iii.  Wage-Statement Violations (NYLL § 195(3))

The NYLL entitles Plaintiff to recover statutory damages for violations of the wage-statement requirement of $250.00 per work day, not to exceed $5,000.00.  N.Y. Lab. Law § 198(1-d).  The Court's calculation of statutory damages remains unchanged from its Memorandum and Order, and as such, Plaintiff is entitled to $5,000.00, the statutory maximum, in statutory damages for Defendants' violation of the wage-statement requirement.  Caltenco I, 2019 WL 4784065, at *13.

---

[5] Because the Court rejects Plaintiff's method of recalculating Plaintiff's regular rate of pay and damages, and therefore rejects Plaintiff's conclusion his regular rate never fell below minimum wage, see ECF No. 98 at 5 n.3, the Court finds Plaintiff is still entitled to spread-of-hours pay damages for days Plaintiff worked more than 10 hours where he was paid below minimum wage. Plaintiff is no longer entitled to a spread-of-hours premium for the week ending August 8, 2010, because his pay did not fall below minimum wage when accounting for Plaintiff working 52 hours that week instead of 56.  Pl. 7 at D25; see, supra, n.2.

[6] Although Plaintiff is entitled to unpaid wages during the week ending August 5, 2012, Pl. 7 at D129, Plaintiff was compensated above minimum wage for the hours worked that week. Therefore, Plaintiff is not entitled to a spread-of-hours premium for the one day he worked 12 hours that week because he did not make below minimum wage.  See Guerrero, 2019 WL 4889591, at *8.

### iv.  Liquidated Damages

Under both the NYLL and the FLSA, an employee is entitled to recover liquidated damages unless the employer can establish a good-faith basis for having failed to pay the required wages.  See 29 U.S.C. § 260; N.Y. Lab. Law § 198(1-a).  In the event an employer does not demonstrate good faith, an employee is entitled to recover liquidated damages under the NYLL up to 100% of the total unpaid wages for violations occurring after April 9, 2011.  See N.Y. Lab. Law §§ 198(1-a), 663(1) (eff. Apr. 9, 2011); Gonzalez v. Masters Health Food Serv. Inc., No. 14 Civ. 7603 (VEC), 2017 WL 3835960, at *18 (S.D.N.Y. July 27, 2017); Sun v. China 1221, Inc., No 12 Civ. 7135 (RJS), 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016).

The Court's finding that Defendants have failed to establish a good-faith basis for having failed to pay either the required wages or spread-of-hours premiums remains unchanged.  See Caltenco I, 2019 WL 4784065, at *13-14.  Thus, the Court finds Plaintiff is entitled to liquidated damages equaling 100% of the unpaid wages and unpaid spread-of-hours premiums described supra, totaling $1,341.10 ($924.85 unpaid wages + $416.25 spread-of-hours premiums).

### v.  Pre-judgment Interest Under The NYLL

The NYLL permits the award of both liquidated damages and pre-judgment interest.  See De La Cruz v. Trejo Liquors, Inc., No. 16 Civ. 4382 (VSB) (DF), 2019 WL 9573763, at *9 (S.D.N.Y. Sept. 10, 2019), R&R adopted, 2020 WL 4432298 (July 30, 2020); Vasquez v. Lahori Kebab & Grill Corp., No. 18 Civ. 2117 (JS) (SIL), 2019 WL 4396724, at *9 (E.D.N.Y. Aug. 13, 2019), R&R adopted, 2019 WL 4620922 (Sept. 5, 2019).  The availability of both NYLL liquidated damages and pre-judgment interest "remains true even where liability is found not only under the NYLL but also under the FLSA."  Begum v. Ariba Disc., Inc., No. 12 Civ. 6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (citing Thomas v. iStar Fin., Inc., 652

F.3d 141, 150 n.7 (2d Cir. 2011)).  Prejudgment interest is calculated based on a plaintiff's actual

damages, but not on liquidated damages or violations of the wage-statement provisions.  See

Gamero, 272 F. Supp. 3d at 515.  Interest is calculated at the statutory rate of nine percent per

year.  N.Y. C.P.L.R. § 5004.  It is calculated "from the earliest ascertainable date the cause of

action existed, except that interest upon damages incurred thereafter shall be computed from the

date incurred."  Id. § 5001(b).  Where, as here, damages were "incurred at various times," id.,

courts typically use the midpoint of the accrual of damages method to calculate interest.  See,

e.g., Padilla v. Manlapaz, 643 F. Supp. 2d 302, 314 (E.D.N.Y. 2009); Doo Nam Yang v. ACBL

Corp., 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005); Liu v. Jen Chu Fashion Corp., No. 00 Civ.

4221 (RJH) (AJP), 2004 WL 33412, at *5 (S.D.N.Y. Jan. 7, 2004).

    Here, although Plaintiff's relevant causes of action (unpaid wages and spread-of-hours

premiums) first accrued on or about August 11, 2012, see Pl. 7 at D129 (date of payment), the

next instance of underpayment did not accrue until on or about April 28, 2014, see id. at D216

(date of payment).  The third accrual of underpayment was on or about January 3, 2015, see Pl. 7

at D251 (date of payment), and all remaining instances of underpayment occurred throughout

2015, until Plaintiff's termination on December 29, 2015.  The Court will adopt a combination of

the two approaches described above, using the reasonable intermediate approach for the 2015

underpayments, and calculating the interest separately for the earlier two instances.  The

midpoint for the purposes of NYLL pre-judgment interest calculations on the 2015

underpayments is July 2, 2015.  Accordingly, because nine percent of $1,231.95 ($855.70 +

$376.25) is $110.88, and there are 365 days in a year, Plaintiff is entitled to recover $0.30 per

day ($110.88/365) from July 2, 2015, until the date judgment is entered.  The August 2012

underpayment totaled $6.14 for the unpaid wages, nine percent of which is $0.55.  Plaintiff is

therefore entitled to recover $0.002 ($0.55/365) per day from August 11, 2012, until the date

judgment is entered.  The April 2014 underpayment totaled $103.01 ($63.01 + $40.00) for the

unpaid wages and spread-of-hours premiums.  Nine percent of $103.01 is $9.27.  Plaintiff is

therefore entitled to recover $0.03 ($9.27/365) per day from April 28, 2014, until the date

judgment is entered.

### vi.  Post-judgment Interest

Plaintiff is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961.  See Blue v.

Finest Guard Servs., Inc., No. 09 Civ. 133 (ARR), 2010 WL 2927398, at *13 (E.D.N.Y. June 24,

2010) (awarding post-judgment interest on an FLSA- and NYLL-based default judgment), R&R

adopted, 2010 WL 2927403 (July 19, 2010); Pereira v. J. Sisters Hair Care Prods., Inc., No. 08

Civ. 4537 (GBD) (RLE), 2010 WL 2194808, at *4 (S.D.N.Y. Apr. 5, 2010), R&R adopted, 2010

WL 2194807 (June 1, 2010).  This amount is calculated from the date of the entry of judgment,

at a rate equal to the weekly average one-year constant maturity Treasury yield, as published by

the Board of Governors of the Federal Reserve System, for the calendar week preceding the date

of the judgment.  See 28 U.S.C. § 1961.

Plaintiff is entitled to statutory post-judgment interest on the money judgment, which

must be calculated by the Clerk of Court from the date the Clerk of Court enters judgment in this

action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.

### c.  Sanctions

In this Circuit, it is very difficult to make the requisite clear showing of bad faith required

for the imposition of sanctions under 28 U.S.C. § 1927 or the Court's inherent powers.  See

Markey v. Lapolla Indus., Inc., No. 12 Civ. 4622 (JS) (AKT), 2015 WL 5027522, at *28

(E.D.N.Y. Aug. 25, 2015) (quoting McCune v. Rugged Ent., LLC, No. 08 Civ. 2677 (KAM),

2010 WL 1189390, at *3 (E.D.N.Y. Mar. 29, 2010)), <u>R&R adopted</u>, 2016 WL 3244968 (Jan. 26,

2016).  "[E]ven if the motives of a party or attorney are questionable, a court may nevertheless

decline to find bad faith."  <u>Id.</u> (quotation omitted) (quoting <u>Gelicity UK Ltd. v. Jell-E-Bath, Inc.</u>,

No. 10 Civ. 5677 (ILG) (RLM), 2014 WL 1330938, at *6 (E.D.N.Y. Apr. 1, 2014)).  Further, the

"threshold for colorability is low," and a claim is considered "'colorable' when, viewed in light

of the reasonable beliefs of the party making the claim, the claim has some amount of factual and

legal support."  <u>McCune</u>, 2010 WL 1189390, at *4 (quoting <u>Revson</u>, 222 F.3d at 78-79)

(emphasis omitted).  Although the Court disagrees both with Plaintiff's proposed damages

recalculation and Plaintiff's interpretation of the Court of Appeals' Summary Order, the Court

declines to find bad faith.  Although a motion or paper "violates Rule 11 if it is frivolous, legally

unreasonable, or factually without foundation, even though not signed in subjective bad faith . . .

. Rule 11 sanctions should be granted with caution."  <u>Manhattan Enter Grp., LLC v. Higgins</u>, No.

18 Civ. 6396 (VSB), 2019 WL 4601524, at *2 (S.D.N.Y. Sept. 22, 2019) (quotation & citations

omitted), <u>aff'd</u>, 816 Fed. App'x 512 (2d Cir. 2020).  Plaintiff has articulated some legal basis and

the principles he relied on for his proposed methodology.  <u>See</u> ECF No. 98 at 2-3; ECF No. 108

at 2-4.  The Court disagrees that it is persuasive but does not find it frivolous.  As such, the Court

declines to impose sanctions in this case.

## IV.    CONCLUSION

In light of the foregoing, Defendants are ordered to pay Plaintiff a total damages award of

$7,682.20, which includes $924.85 in unpaid wages, $416.25 in unpaid spread-of-hours

premiums, $1,341.10 in liquidated damages, and $5,000.00 in statutory damages for violating the

wage statement provisions of the NYLL, plus pre-judgment interest under the NYLL calculated

at $0.30 per day from July 2, 2015; $0.002 per day from August 11, 2012; and $0.03 per day

from April 28, 2014, until the date judgment is entered, and post-judgment interest pursuant to

28 U.S.C. § 1961.  Judgment will be entered separately.

Dated:  Brooklyn, New York
         September 30, 2021

_Vera M. Scanlon_
_____
VERA M. SCANLON
United States Magistrate Judge

27